**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KAREN M. BECKER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE WEINBERG GROUP, INC. PENSION TRUST, et al.,**<br><br>**Defendants.** | **Civil Action No. 03-1668 (GK)** |

**MEMORANDUM OPINION**

Plaintiff, Karen M. Becker, a former employee of The Weinberg Group, Inc., brings this suit alleging, inter alia, breaches of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., and a failure to pay pension benefits. Defendants are The Weinberg Group, Inc. Pension Trust (the "Plan"), Myron and Arlyne Weinberg,[1] Matthew Weinberg,[2] and The Weinberg Group, Inc. (the "Company").[3] This matter is before the Court on the Plan's Motion to Dismiss. Upon consideration of the

[1] Plaintiff is suing Myron and Arlyne Weinberg individually, and in their official capacity as Trustees of The Weinberg Group, Inc. Pension Trust.

[2] Plaintiff is suing Matthew Weinberg individually, and in his official capacity as Fiduciary of The Weinberg Group, Inc. Pension Trust.

[3] Plaintiff is suing the Company as Plan Administrator of The Weinberg Group, Inc. Pension Trust. The Company provides testing and research services primarily to businesses trying to gain regulatory approval for their products or operations. It also helps customers improve manufacturing processes and defend their products in court and the media.

Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, the Plan's Motion to Dismiss is **denied.**

## I. BACKGROUND

### A. Factual History[4]

Plaintiff was employed with the Company from September 1, 1990 until February 28, 2002.[5] From 1998 until 2002, Plaintiff was employed as a Company director. As a Company employee, she was a participant in the Company's Plan.

Under the terms of the Plan, each participant is entitled, upon retirement or termination, to vested benefits that accrue based on, among other things, compensation and years of service. See Compl. ¶ 22. The Plan documents provide several options for distribution of benefits to participants, including a lump sum distribution, upon a participant's termination of employment with the Company. See id. ¶ 23.

Plaintiff claims that in 1994, "the Company and Defendants Myron Weinberg and Arlyne Weinberg entered into an agreement to segregate assets of the Pension Plan into a 'separate account' for

[4] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. See Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from Plaintiff's Complaint or from the undisputed facts presented in the parties' briefs.

[5] Plaintiff's counsel refer to Plaintiff by her first name, "Karen," in their briefs. This is improper. In this Court, the parties should be referred to as "Plaintiff" and "Defendant."

the sole benefit of Myron Weinberg and Arlyne Weinberg, despite the fact that all Trust assets must be available to pay for the benefits of all participants." Id. ¶ 31. Plaintiff maintains that "[c]reation of this 'separate account' in 1994 was in violation of Internal Revenue Service criteria for determining the permissibility of a 'separate account' and therefore was made by fiduciaries in breach of their fiduciary duties owed to the Pension Plan." Id. ¶ 32. According to Plaintiff, "[d]ue to these violations, the assets in the 'separate account' continued to be Pension Plan assets that were required to be available to provide benefits for all participants including Plaintiff." Id.

Plaintiff alleges that in November 1999, the Plan assets in the "separate account" were "paid in full" to Defendants Myron and Arlyne Weinberg "without testing for compliance with the Treasury regulations governing distributions to highly compensated employees" and "without application of the restrictions on lump sum distributions to highly compensated employees, as required under Treasury regulations, 26 C.F.R. § 1.401(a)(4)-5(b) and section 14.04 of the Pension Plan, as amended."[6] Id. ¶ 35. Plaintiff also

---

[6] Section 14.04 of the Plan contains restrictions on the benefits payable to any participant who is among the twenty-five most highly compensated employees of the Company at the time distribution is made. These provisions reflect the requirements of 26 C.F.R. § 1.401(a)(4)-5(b) and Rev. Rul. 92-76, 1992-2 C.B. 76. Both Myron Weinberg, as the Chief Executive Officer of the Company until 1997, and Arlyne Weinberg, as the President of an affiliated company that participated in the Plan, were among the twenty-five (continued...)

contends that "[t]he distributions of Pension Plan assets from the 'separate account' were made at a time when the amount of assets in the Pension Plan, after subtracting the amount of the planned distribution, did not equal or exceed 110 percent of the Pension Plan's current liabilities," as required by Section 14.04 of the Pension Plan. Id. In addition, Plaintiff maintains that "Defendants represented in a letter to the Internal Revenue Service dated October 7, 2002 (the 'VCO Letter') that there were at least ten (10) lump sum distributions made to [other] highly compensated employees during the years 1996 through 2000, in addition to the lump sum distributions to Defendants Myron Weinberg and Arlyne Weinberg." Id. ¶ 36.

In a staff meeting on February 15, 2002, Matthew Weinberg informed all employees that the Company would no longer make any lump sum distributions of benefits to participants in the Pension Plan, because, according to Plaintiff, "the Pension Plan had paid out a significant number of benefits to previously retired or terminated participants." Id. ¶ 39.

On February 28, 2002, the Company terminated Plaintiff's employment. See id. ¶ 24.

On November 27, 2002, Plaintiff filed a claim for a lump sum distribution of her benefits. See id.

---

[6] (...continued) most highly compensated employees of the Company. See Compl. ¶¶ 33, 34.

By letter dated December 19, 2002, the Company informed her that "[t]he Plan is both willing and able to pay Dr. Becker the full amount of her accrued benefit in a lump sum subject to the restrictions described in the immediately following paragraph." Specifically, the Company informed her that, pursuant to Section 14.04 of the Plan, in order to receive a lump sum distribution of her benefits, she must (1) "deposit[] amounts in escrow with a fair market value equal to at least 125% of the restricted amount;" (2) "provid[e] a bank letter of credit in an amount equal to 100% of the restricted amount;" or (3) "post[] a bond equal to at least 100% of the restricted amount."

According to Plaintiff, "[h]ad Defendants properly valued the assets of the Pension Plan, had Defendants collected contributions from the Company in accordance with prudent funding policy, and had Defendants Myron Weinberg and Arlyne Weinberg not helped themselves to the Pension Plan assets, the Pension Plan would have had sufficient assets to make the unrestricted lump sum distribution of benefits to Plaintiff that she requested." Compl. ¶ 54.

**B. Procedural History**

On August 5, 2003, Plaintiff filed the instant action alleging, inter alia, breaches of fiduciary duty under ERISA and a failure to pay pension benefits. Plaintiff asserts six separate causes of action against Defendants which she groups into two general categories: (1) claims on behalf of the Plan for the

Defendants' breach of fiduciary duty through their mismanagement of plan assets (Counts One, Two and Six); and (2) claims in Plaintiff's own capacity for benefits under the Plan (Counts Three, Four and Five).

Plaintiff seeks a judgment (1) declaring Defendants jointly and severally liable to the Plan (including in their capacities as co-fiduciaries) for all losses to the Plan resulting from the alleged fiduciary breaches; and (2) enjoining Defendants from further violating any provision of ERISA or the Plan's governing instruments. Plaintiff also seeks the full amount of her benefits, together with the costs of this action, including reasonable attorney's fees, and interest from the date she claims the lump sum distribution of her benefits should have been made.

On April 7, 2004, the Court denied Defendants' motion to dismiss or, in the alternative, for summary judgment. First, the Court held that "Counts One, Two and Six should not be dismissed because Plaintiff has not waived her right to bring a claim on behalf of the Plan itself." Becker v. The Weinberg Group, Inc., Pension Trust, et al., No. 03cv1668 (GK), April 7, 2004, Mem. Op. at 9. Second, it held that "Counts Three, Four and Five of Plaintiff's Complaint should not be dismissed because Plaintiff has not waived her right to bring a claim for benefits under the Plan." Id. Third, it held that "[s]ince the Court is treating Defendants' Motion as a Motion to Dismiss, rather than as a motion for summary

judgment, Defendants' claim that Plaintiff is not entitled to an unrestricted lump sum distribution of benefits is premature." Id. at 10. Finally, the Court held that "Plaintiff has prevailed in this Motion requiring interpretation of the terms or scope of the Settlement Agreement. As such, she is entitled to her reasonable attorneys' fees and costs pursuant to Section 18 of the Settlement Agreement." Id. at 11.

On July 23, 2004, the Court granted Plaintiff's motion to disqualify counsel for the other Defendants from representing the Plan and directed the Plan to retain new, independent counsel on the ground that "[t]he facts of the instant case present a clear conflict of interest[.]" Becker v. The Weinberg Group, Inc., Pension Trust, et al., No. 03cv1668 (GK), July 23, 2004, Mem. Op. at 7.

On December 14, 2004, in accordance with the briefing schedule established by the Court, the Plan filed the instant Motion to Dismiss.[7]

---

[7] Plaintiff argues that "[s]ince the Court already had a chance to consider and deny a 12(b)(6) Motion to Dismiss filed by Defendant, any new 12(b)(6) motion by the Plan has to be either dismissed or be treated as a motion for reconsideration of the previous Court's decision." Pl.'s Opp'n at 4.

As the Plan points out, on December 14, 2004, the Court established a schedule for the parties to brief the instant Motion. "At no time during this discussion did plaintiff's counsel object that the Court should not allow the Plan to file its own Motion to Dismiss because the Plan already had been party to a prior unsuccessful motion to dismiss by all defendants. Rather, (continued...)

## II. STANDARD OF REVIEW

A motion to dismiss should only be granted "when it appears beyond doubt that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). Because such motions "summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, [they] should be treated with the greatest of care." Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987). Accordingly, the factual allegations of the Complaint must be presumed true and liberally construed in favor of Plaintiff. Shear, 606 F.2d at 1253.

---

[7] (...continued)
plaintiff's counsel's sole objection, such as it was, was directed at the possibility that undersigned counsel was being paid by the Weinbergs and thus might be seeking to interpose a Motion to Dismiss for improper purposes unrelated to the Plan's own legitimate interests." Def.'s Reply at 2 (internal citations omitted) (emphasis in original). Counsel for the Plan assured the Court, in response to the Court's inquiries, that they (1) were not being paid by the Weinbergs; (2) were acting as "independent counsel representing the [P]lan itself and [were] not beholden in any way to other defendants in the case;" and (3) had evaluated the case solely with the Plan's own interests in mind and "made an independent, good faith decision and judgment that under Rule 11 there is reason to file a [M]otion to [D]ismiss." Id. at 3 (quoting Tr. at 7). The Court, upon obtaining these assurances, and with full awareness of the procedural history of the case, including, in particular, the prior unsuccessful motion to dismiss filed by all Defendants, established a briefing scheduling for the instant Motion.

Against this backdrop, it is clear that Plaintiff has waived whatever objections she might have had to the Plan filing its own motion to dismiss based on grounds unique to it.

## III. ANALYSIS

### A. The Motion to Dismiss Counts One, Two, and Six of the Complaint Must Be Denied Because Those Counts Are Not Brought Against the Plan

Counts One, Two, and Six of the Complaint allege breaches of fiduciary duty by the Company, and Myron, Arlyne, and Matthew Weinberg; they request recovery on behalf of the Plan under ERISA Section 409(a), 29 U.S.C. § 1109(a).[8]

The Plan argues that, to the extent Plaintiff seeks relief on behalf of the Plan for breaches of fiduciary duty, she has failed to state a cause of action. Specifically, the Plan contends that, under ERISA, a claim for breach of fiduciary duty may be maintained only on behalf of the plan itself, not against the employee benefit plan. The plan, if a party at all, is, therefore, properly a plaintiff. See Def.'s Mot. at 2 (citing Kling v. Fidelity Mgmt. Trust Co., 323 F.Supp.2d 132, 148 (D. Mass. 2004) ("[t]he [p]lan cannot be both plaintiff and defendant" in a breach of fiduciary duty action); Mertens v. Kaiser Steel Retirement Plan, 744 F.Supp.

---

[8] ERISA Section 409(a) states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

917, 924 (N.D. Cal. 1990), aff'd, Mertens v. Black, 948 F.2d 1105, 1106 (9th Cir. 1992) (same); Chemtech Indus., Inc. v. Goldman Fin. Group., Inc., 156 F.R.D. 181, 184 (E.D. Miss. 1994) (same)).

A plain and simple reading of the Complaint, including the remedies requested, however, makes it clear that Counts One, Two, and Six are not brought against the Plan.[9] It is simply not a Defendant to those claims. Thus, the instant Motion is inapplicable as to those Counts of the Complaint, and must be denied as to them.

**B. Counts Three and Five of the Complaint Serve as a Basis for the Inclusion of the Plan as a Defendant in this Action**

In Counts Three and Five of the Complaint, Plaintiff claims that, as a result of the breaches of fiduciary duty alleged in Counts One, Two, and Six, she "was not able to receive benefits due to her under the terms of the Plan and had to bring this suit"

---

[9] Both parties cite extensive caselaw on the issue of whether an ERISA plan may be named as a defendant. After carefully considering that caselaw, the Court concludes that it is inapposite to the instant factual situation given the holding supra, that Counts One, Two, and Six do not purport to state a claim against the Plan.

under ERISA Section 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B).[10] Pl.'s Opp'n at 1.

The Plan argues that both of these Counts "are entitled 'Claim for Benefits.' If this title accurately reflected the substance of the allegations contained within these two Counts, then we readily would concede that the Pension Plan is a proper defendant in this action." Def.'s Mot. at 6. According to the Plan, however, "[b]ecause plaintiff has not asserted a colorable '[c]laim for [b]enefits' against the Pension Plan either in Count III or Count V -- but instead has done nothing more than rehash her previously-asserted breach-of-fiduciary-duty claims -- neither Count III nor Count V serves as a basis for the inclusion of the Pension Plan as a defendant in this action." Id. at 8.

The Plan maintains that Plaintiff has failed to state a valid claim for benefits under ERISA Section 502(a)(1)(B) because she does not allege that the Plan "had sufficient assets in November 2002 to make the unrestricted lump sum distribution that [P]laintiff requested at that time." Def.'s Reply at 10. Specifically, it argues that "the thrust of this lawsuit is that the Plan did not have sufficient assets in November 2002 to make

---

[10] ERISA Section 502 states, in relevant part,

> A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him [sic] under the terms of his [sic] plan.

29 U.S.C. 1132(a)(1)(B).

the unrestricted lump sum distribution that [P]laintiff requested at that time, in substantial part because in earlier years the Company had -- in violation of § 14.04 of the Plan -- made lump sum distributions to the Weinbergs and others without obtaining collateral or security for those distributions. Unsurprisingly then, [P]laintiff does not allege anywhere in her Complaint -- and cannot allege in good faith -- that when she requested an unrestricted lump sum distribution of benefits in November 2002, she was entitled to such a distribution of benefits under the terms of the Plan." Id. (emphasis in original).

Contrary to the Plan's argument, however, Plaintiff alleges that "[s]hould the Plan's assets be calculated properly,[11] the value of the Plan's assets (at the time [she] requested her benefit) would exceed 110% of its liabilities, thus entitling [her] to an unrestricted lump sum distribution." Pl.'s Opp'n at 11. As Plaintiff correctly points out, "[t]his allegation served as the basis for the current lawsuit and was adequately reflected in the Complaint." Id. (citing Compl. ¶¶ 32, 54).

---

[11] Specifically, Plaintiff claims that the Company, as Plan Administrator, incorrectly valued the Plan's assets by failing, among other things, to (1) "ascribe any value to [the] $2.9 million improperly distributed to Defendants Myron and Arl[y]ne Weinberg;" and (2) "ascribe any value to the required collateral or security from any of the former participants who improperly received lump sum distributions (such failure at the same time constituting a breach of fiduciary duty on [the] part of the Administrator)." Pl.'s Opp'n at 11.

Plaintiff has, therefore, stated a valid claim for benefits pursuant to ERISA Section 502(a)(1)(B) in Counts Three and Five of the Complaint.[12] Thus, as the Plan has "readily" conceded, both Counts Three and Five do serve as a basis for the inclusion of the Plan as a Defendant in this action. Accordingly, the instant Motion must be denied as to Counts Three and Five of the Complaint.

**C. Count Four of the Complaint Serves as a Basis for the Inclusion of the Plan as a Defendant in this Action**

In Count Four of the Complaint, Plaintiff alleges that "Defendants' discrimination against Plaintiff interferes with Plaintiff's right to receive benefits under ERISA and the Pension

---

[12] In the motion to dismiss denied by the Court on April 7, 2004, Defendants argued that Plaintiff was not entitled to an unrestricted lump sum distribution of benefits because such a distribution would violate certain federal regulations and the terms of the Pension Trust documents. The Court concluded that this argument "is based on numerous factual assertions and documents which are outside the pleadings." Becker v. The Weinberg Group, Inc., Pension Trust, et al., No. 03cv1668 (GK), April 7, 2004, Mem. Op. at 10. It held that "[s]ince the Court is treating Defendants' Motion as a Motion to Dismiss, rather than as a motion for summary judgment, Defendants' claim that Plaintiff is not entitled to an unrestricted lump sum distribution of benefits is premature." Id. To the extent the Plan is asserting a similar argument in the instant Motion, this reasoning is controlling.

Plan, in violation of ERISA Section 510, 29 U.S.C. § 1140."[13] Compl. ¶ 65.

The Plan argues that Count Four of the Complaint should be dismissed because a "§ 510 claim does not lie against the Pension Plan, which is not a 'person' within the meaning of § 510." Def.'s Mot. at 9. In Plaintiff's Opposition to the instant Motion, Plaintiff maintains that the Plan "mistreats" Count Four as a claim under ERISA Section 510, when in reality it is a claim for benefits under ERISA Section 502, which has ERISA Section 510 "as its underlying basis." Pl.'s Opp'n at 9, n.6. Specifically, she claims that in Count Four of the Complaint, she alleges that "the discriminatory treatment in her benefit claim processing led to the denial of her benefit application. Thus, [she] is entitled (under Section 1132(a)(1)(B) [Section 502(a)(1)(B)]) to recover the full amount of her benefits." Id.

To be sure, Plaintiff's allegations in Count Four of the Complaint could be clearer. In light of Plaintiff's clarifications

---

[13] ERISA Section 510 states, in relevant part,

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, [or] this subchapter, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]

29 U.S.C. § 1140.

in her Opposition to the instant Motion, however, the Plan's argument that Count Four should be dismissed because the Plan is not a "person" within the meaning of ERISA Section 510 is no longer apposite.

Plaintiff has, therefore, stated a valid claim for benefits pursuant to ERISA Section 502(a)(1)(B) in Count Four of the Complaint. Count Four serves as a basis for the inclusion of the Plan as a Defendant in this action and, therefore, the instant Motion must be denied as to Count Four.

**C. Plaintiff Is Not Entitled to Her Attorney's Fees and Costs**

Plaintiff argues that the Plan should be made liable to her for the costs and attorney's fees incurred in defending the instant Motion "[s]ince Defendant did not bother to provide this Court with a single reason why it considered itself entitled to re-argue its already lost 12(b)(6) motion[.]" Id. at 13. As the Court has already noted, however, "Plaintiff has waived whatever objections she might have had to the Plan filing its own motion to dismiss based on grounds unique to it." See infra at 8, n.6. Plaintiff is not, therefore, entitled to her attorney's fees and costs.

## IV. CONCLUSION

For the foregoing reasons, the Plan's Motion to Dismiss is **denied.**

An Order will issue with this Memorandum Opinion.

July 27, 2005

/s/
Gladys Kessler
United States District Judge